## SNYDER v. BETTMAN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 230. Argued April 7, 8, 1903.—Decided June 1, 1903.

This court has determined that Congress has power to tax successions; that the States have the same power, and that such power of the States extends to bequests to the United States; it follows that Congress has the same power to tax the transmission of property by legacy to States or to their municipalities.

The exercise of that power in neither case conflicts with the proposition that neither the Federal nor a state government can tax the property or agencies of the other, as the taxes are not imposed upon the property itself but upon the right to succeed thereto.

THIS was an action brought by the executor of David L. Snyder against the collector of internal revenue to recover $22,000, succession tax upon a legacy of $220,000, bequeathed to the city of Springfield, Ohio, in trust to expend the income in the maintenance, improvement and beautifying of a public park of the city, known as Snyder Park, including any extension thereof which said city might acquire. Such tax having been paid under protest, this action was brought to secure a refunding of the same.

A demurrer to the petition having been overruled by the Circuit Court, and final judgment entered, the case was brought here by writ of error.

*Mr. J. E. Bowman* for plaintiff in error.

*Mr. Assistant Attorney General Beck* for defendant in error.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

This case involves the single question whether it is within the power of the Federal government, and within the spirit of the act of Congress of June 13, 1898, 30 Stat. 448, as amended March 2, 1901, 31 Stat. 946, to impose a succession tax upon a bequest to a municipal corporation of a State for a corporate and public purpose.

The case is to a certain extent the converse of those of the *United States* v. *Perkins*, 163 U. S. 625, and *Plummer* v. *Coler*, 178 U. S. 115. In the first of these we held it to be within the competency of the State of New York to impose a similar tax upon a bequest to the Federal government, incidentally deciding (1) that the inheritance tax of the State was " in reality a limitation upon the power of a testator to bequeath his property to whom he pleases; a declaration that, in the exercise of that power, he shall contribute a certain percentage for the public use; " and (2) that the tax was not a tax upon the property itself, but upon its transmission by will or descent. In *Plummer* v. *Coler* we held the incidental fact that the property bequeathed is composed in whole or in part of Federal securities, did not invalidate the state tax or the law under which it was imposed, although it was accepted as undeniable that the State could not, in the exercise of the power of taxation, tax obligations of the United States, and, correlatively, that bonds issued by a State, or under its authority by its municipal bodies, were not taxable by the United States.

It is insisted, however, that the case under consideration is distinguished from those above cited, in the fact that the inheritance tax of New York was but a condition annexed to the power of a testator to dispose of his property by will, and

that such power, being purely statutory, the State has the right to annex such conditions to it as it pleases. The case, then, really resolves itself into the question whether the authority to lay a succession tax arises solely from the power to regulate the descent of property, or, as well from the independent general power to tax, or, as expressed in the Constitution, art. I, sec. 8, "to lay and collect taxes, duties, imposts and excises." The difficulty with this proposition of the plaintiff is that it proves too much. If it be true that the right to impose such taxes arises solely from the right to regulate successions, then a denial of such right goes to the whole power of the government to impose a succession tax, irrespective of the question whether the legacy is made to a private individual or to an agent of the State, and the cases in this court upholding the power of the Federal government to lay such tax were wrongly decided.

That question was exhaustively considered by this court in *Knowlton* v. *Moore,* 178 U. S. 41, in which the constitutionality of this law was attacked upon four grounds: (1) That the taxes imposed were direct taxes, and not apportioned according to the population; (2) if not direct, they were levied on rights created solely by a state law, depending for their continued existence on the consent of the several States; (3) because they were not uniform throughout the United States; (4) that the rate of tax was determined by the aggregate amount of the personal estate of the deceased, and not by the sum of the legacies or distributive shares. It was held, following the cases of *United States* v. *Perkins,* 163 U. S. 625, and *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, that an inheritance tax was not one upon property but upon the succession. The question involved here, as to the power of Congress to levy a succession tax, was considered, and it was said by Mr. Justice White (p. 56): "The proposition that it cannot rests upon the assumption that, since the transmission of property by death is exclusively subject to the regulating authority of the several States, therefore the levy by Congress of a tax on inheritances or legacies, in any form, is beyond the power of Congress, and is an interference by the national gov-

ernment with a matter which falls alone within the reach of state legislation." This proposition was pronounced a fallacy (p. 59): "In legal effect, then, the proposition upon which the argument rests is that wherever a right is subject to exclusive regulation, by either the government of the United States on the one hand or the several States on the other, the exercise of such rights as regulated can alone be taxed by the government having the mission to regulate." In this connection was cited the power of the States to tax imported goods after they had been commingled with the general property of the State, as well as vehicles engaged in interstate commerce.

Continuing, it was further said (page 60): "It cannot be doubted that the argument when reduced to its essence, demonstrates its own unsoundness, since it leads to the necessary conclusion that both the national and state governments are divested of those powers of taxation which from the foundation of the government admittedly have belonged to them. . . . Under our constitutional system both the national and the state governments, moving in their respective orbits, have a common authority to tax many and diverse objects, but this does not cause the exercise of its lawful attributes by one to be a curtailment of the powers of government of the other, for · if it did there would practically be an end of the dual system of government which the Constitution established."

This case must be regarded as definitely establishing the doctrine that the power to tax inheritances does not arise solely from the power to regulate the descent of property, but from the general authority to impose taxes upon all property within the jurisdiction of the taxing power. It has usually happened that the power has been exercised by the same government which regulates the succession to the property taxed; but this power is not destroyed by the dual character of our government, or by the fact that under our Constitution the devolution of property is determined by the laws of the several States.

The principles laid down in *Knowlton* v. *Moore* were reiterated in *Murdock* v. *Ward*, 178 U. S. 139, although the case was decided upon the authority of *Plummer* v. *Coler*.

If it be true that it is beyond the power of Congress to im-

pose an inheritance tax because the descent of property is regulated by state statutes, it would be difficult to support its power to impose stamp taxes upon commercial and legal instruments, since the conveyance, regulation and transmission of all property is governed by the laws of the several States. Particularly would this be so with reference to stamp duties imposed upon documents connected with the devolution of the property of a deceased person. And yet, as stated in *Knowlton* v. *Moore*, (page 50,) Congress, as early as 1797, imposed a stamp duty, not only upon receipts or other discharges for or on account of any legacy, or for a share of personal estate divided under the statute of distributions, proportioned to the amount of the legacy or such distributive share, but in the internal revenue act of 1862, 12 Stat. 432, 483, a tax was imposed upon the probate of wills and letters of administration, proportioned to the value of the estate. Not only this, but the same statute imposed a tax upon writs, or other original process, by which suits are commenced in any court of record, exempting only processes issued by justices of the peace, or in suits begun by the United States, or any State. This act was treated as applicable to the state courts, although its constitutionality may well be doubted.

Referable to the same principle is the power of Congress to tax occupations which can only be carried on by permission of the state authorities and under conditions prescribed by its laws —such, for instance, as the profession of a lawyer or physician, or the business of dealing in spirituous liquors, for which licenses are required under the laws of nearly all the States. While the power of Congress to impose such taxes may never have been expressly affirmed by this court, it does not seem to have been seriously questioned, and is a legitimate inference from *McGuire* v. *The Commonwealth*, 3 Wall. 387 ; *The License Tax Cases*, 5 Wall. 462; *Pervear* v. *The Commonwealth*, 5 Wall. 475, and *Royall* v. *Virginia*, 116 U. S. 572, 580. See also *Ould* v. *City of Richmond*, 23 Gratt. 464 ; *Humphreys* v. *City of Norfolk*, 25 Gratt. 97.

Conceding fully that Congress has no power to impose a burden upon a State or its municipal corporations, the question

in each case is whether the tax is direct or incidental; since we have had frequent occasion to hold that the imposition of a tax may indirectly affect the value of property to the amount of the tax without being legally objectionable as a direct burden upon such property. Thus in *Van Allen* v. *The Assessors*, 3 Wall. 573, we held it to be within the power of the States to tax the shares of national banks, though a part or the whole of the capital of such bank were invested in national securities exempt from taxation, upon the ground that the taxation of the shares was not a taxation of the capital. So a tax upon deposits was upheld, though such deposits were invested in United States securities. *Society for Savings* v. *Coite*, 6 Wall. 594; *Provident Institution* v. *Massachusetts*, 6 Wall. 611; *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632. The same principle was extended to a statute of New York, imposing a tax upon corporations measured by its dividends, though such dividends were derived from interest upon government bonds. *Home Ins. Co.* v. *New York*, 134 U. S. 594. As the tax in the case under consideration is collected from the property while in the hands of the executor (sec. 30), who is required to liquidate it " before payment and distribution to the legatees," we do not regard it as a tax upon the municipality, though it may operate incidentally to reduce the bequest by the amount of the tax. Such incidental effects are common to many, if not all, forms of taxation—indeed it may be said generally that few taxes are wholly paid by the person upon whom they are directly and primarily imposed.

Having determined, then, that Congress has the power to tax successions; that the States have the same power, and that such power extends to bequests to the United States, it would seem to follow logically that Congress has the same power to tax the transmission of property by legacy to States, or their municipalities, and that the exercise of that power in neither case conflicts with the proposition that neither the Federal nor the state government can tax the property or agencies of the other, since, as repeatedly held, the taxes imposed are not upon property, but upon the right to succeed to property.

If the position of the plaintiff be sound, it will come to pass

that, with the same power to tax the subject matter, *i. e.*, the transmission of the property, the States are competent to limit the amount of bequests to the Federal government by requiring the prepayment of a succession tax as a condition precedent to the transmission of the property, while Congress is impotent to accomplish the same result with respect to legacies to States or their agents.   We are reluctant to admit the inferiority of Congress in that particular.

The judgment of the Circuit Court is therefore,

*Affirmed.*

MR. JUSTICE WHITE, with whom concur MR. CHIEF JUSTICE FULLER and MR. JUSTICE PECKHAM, dissenting.

It is conceded in the opinion of the court that the bequest upon which it is sought to levy the United States inheritance tax was made to a municipal corporation for a public, that is, a governmental purpose.   This being the admitted premise, I cannot give my assent to the proposition that the tax can be imposed.   Nothing is better settled than that the United States has no power to tax the governmental attributes of the States, and that municipal corporations are agencies of the States and not subject, as to their public rights and duties, to direct or indirect taxation by the United States.   The doctrine has nowhere been more clearly stated than in *Pollock v. Farmers' Loan & Trust Co.*, 157 U. S. 429, 583–584.   In that case, despite the division of opinion on other questions, the court was unanimous in holding that, in any event, income subject to taxation by the United States could not include interest derived from municipal bonds, because to include such interest in income subject to taxation would amount at least to an indirect charge upon a state governmental agency.   Speaking through Mr. Chief Justice Fuller, the court said:

" The Constitution contemplates the independent exercise by the nation and the State, severally, of their constitutional powers.

" As the States cannot tax the powers, the operations, or the property of the United States, nor the means which they em-

ploy to carry their powers into execution, so it has been held that the United States have no power under the Constitution to tax either the instrumentalities or the property of a State.

"A municipal corporation is the representative of the State and one of the instrumentalities of the state government. It was long ago determined that the property and revenues of municipal corporations are not subjects of Federal taxation. *Collector* v. *Day*, 11 Wall. 113, 124; *United States* v. *Railroad Company*, 17 Wall. 322, 332."

It is true that in *United States* v. *Perkins*, 163 U. S. 625, and *Plummer* v. *Coler*, 178 U. S. 115, it was held in the one case that an inheritance tax of the State of New York could be taken out of a bequest to the United States, and in the other that a bequest of bonds of the United States was subject to a state inheritance tax. It is also true that in *Knowlton* v. *Moore*, 178 U. S. 41, it was decided that the United States had the power to impose an inheritance tax. But the ruling in none of these cases, in my opinion, sustains the decision now made. The power of the State of New York, which was upheld in both the *Perkins* and *Coler* cases, rested not simply on the authority of that State to impose an inheritance tax, but upon its admitted right to regulate the transmission or receipt of property by death. On the other hand, the right of the United States to levy an inheritance tax, which was upheld in *Knowlton* v. *Moore*, was based solely upon the power of the United States to tax, and that case therefore conveys no intimation that there is authority in the United States to levy an inheritance tax upon an object which it has no power under the Constitution to tax at all, either directly or indirectly. The distinction between the two, that is, between the broader power of a State resulting from its authority not only to tax but also to regulate the transmission or receipt of property by death, and the narrower power, that is, of taxation alone vested in the government of the United States, was explicitly pointed out in *Knowlton* v. *Moore, supra*, at page 57. Moreover, attention was specially directed to the obvious distinction between the two on page 58, where it was said:

"Of course, in considering the power of Congress to impose

death duties, we eliminate all thought of a greater privilege to do so than exists as to any other form of taxation, as the right to regulate successions is vested in the States and not in Congress."

So also the difference between the two had been previously accentuated in *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 287, 288. There is no confusion between the two classes of cases, and no room in reason seems to me to exist for the assumption that things which are different are nevertheless one and the same. On the contrary, to my mind it appears that misconception will necessarily be caused by confounding wholly different powers and from supposing that because a particular result is justified where a specified power exists, the same consequence must obtain where the power upon which it depends is wanting. Certainly, I assume, it cannot be said because a State has the right to regulate successions and, therefore, to prevent property from passing by death to the United States, hence also the United States must have power by regulating successions to prevent property from passing by death to a State or its governmental agencies. And yet, in my opinion, this is the logical consequence of the doctrine that because the States may in virtue of an authority belonging to them accomplish a particular result as regards the United States, therefore the United States must have the right to bring about the same thing as to the States. The United States not possessing, as the States do, the right to regulate successions, when the United States calls into play its taxing power over the subject of the passage or receipt of property by death, the extent of its authority is to be measured solely by the scope of the taxing power conferred by the Constitution. When, on the contrary, the State imposes a burden upon the passage or receipt of property by death, its right to do so, if not sustainable by the exercise of the taxing power, finds adequate support in the authority vested in it to regulate the transmission or receipt of property on the occasion of death. This was clearly pointed out in *United States* v. *Perkins, supra,* 630, where it was said: "The legacy becomes the property of the United States only after it has suffered a diminution to the amount of the tax, and it is

only upon this condition that the legislature assents to a bequest of it." Nor do I see the force of the suggestion that as the tax in question is imposed upon the property in the hands of the executor before payment and distribution to the legatees, it, therefore, cannot be regarded as tax upon the right of the municipality to receive the legacy. It was held, after great deliberation, in *Knowlton* v. *Moore,* 178 U. S. 41, that the inheritance taxes levied by the act of Congress were not imposed on the estate of the decedent but were laid on the passing of the legacies, and on nothing else. It cannot be the intention now to bring about the confusion which must arise from overthrowing this settled doctrine, since it is conceded that the only question for decision is the right of Congress to impose a succession tax *upon the bequest to a municipal corporation for a public purpose.* It being admitted that such is the question for decision, I do not perceive how that question can be solved by saying that the tax is not on the passing of the bequest to the municipality, but is imposed on the estate in the hands of the executor before the municipality receives its legacy. It was not only directly held in *Knowlton* v. *Moore* that the tax was on the transmission or the receipt of the legacy occasioned by death, and was therefore not on the property, not on the estate, not on the executor, but it was also held to be a burden imposed on the recipient. The court said (p. 60):

" Certainly, a tax placed upon an inheritance or legacy diminishes, to the extent of the tax, the value of the right to inherit or receive, but *this is a burden cast upon the recipient* and not upon the power of the State to regulate."

This conclusion was absolutely essential to the construction of the statute which was sustained in *Knowlton* v. *Moore.* I do not perceive how it can be now held that the tax is valid because it is on the estate in the hands of the executor and not a burden on the recipient, when the case of *Knowlton* v. *Moore,* which explicitly holds to the contrary, is expressly approved. It is, however, suggested that the tax is only incidentally on the right of the corporation to receive, and therefore is valid. If " incidentally " is intended to refer to the subject upon which the tax is levied, then the proposition, in my

opinion, only reiterates the misconception to which attention has been previously called, and it besides conflicts with the conceded premise that the question for decision is whether a tax can be validly imposed on the right of a municipal corporation to take a legacy. Such cannot be the question if there is no such question in the case. If the term "incidentally" conveys the thought that the tax is only indirectly on the corporation's right to take the bequest, and therefore it may be lawfully imposed, the doctrine overthrows the rule announced by Chief Justice Marshall in *McCulloch* v. *Maryland*, 4 Wheat. 316, and reiterated in numberless cases since that decision, to the effect that where there is a want of constitutional power to tax a particular object' neither a direct nor an indirect tax can be imposed, since the power to tax is the power to destroy. It to me seems that the tax here in question bears more directly upon the right of the corporation to take the bequest than did the tax which was condemned in *McCulloch* v. *Maryland*. Assuredly, the inclusion in income subject to taxation of an amount derived from interest on municipal bonds is less directly on the bonds than is the tax in this case, on the right of the municipality to take, and yet, as I have said in *Pollock* v. *Farmers' Loan & Trust Company*, the tax on an income made up in part of interest on a municipal bond was declared to be void, because, even if indirect, it could not be levied where there was no power to tax at all. The distinction was pointed out in *Knowlton* v. *Moore*, where, in referring to the statement of Mr. Chief Justice Marshall in *McCulloch* v. *Maryland*, that the power to tax involves the power to destroy, it was said (p. 60):

"This principle is pertinent only when there is no power to tax a particular subject. . . . In other words, the power to destroy which may be the consequence of taxation is a reason why the right to tax should be confined to subjects which may be lawfully embraced therein, even although it happens that in some particular instance no great harm may be caused by the exercise of the taxing authority as to a subject which is beyond its scope."

To my mind no doctrine more dangerous and more subversive of a long line of settled authority in this court could be

announced than the statement that, although there is no power whatever to tax a particular object, the courts will nevertheless maintain a tax if it only indirectly puts a burden on the forbidden object or that the tax may be sustained because in the judgment of a court the degree in which the Constitution has been violated is not great. Constitutional restrictions are in my opinion imperative, and ought not to be disregarded because in a particular case it may be the judgment of a court that the violation is not a very grievous one.

Testing the validity of the tax in this case solely by the extent of the power to tax conferred on the government of the United States by the Constitution, it follows, as the United States has no right to directly or indirectly burden a state governmental agency, that the tax here in question, in my opinion, cannot be sustained.

I am authorized to say that the CHIEF JUSTICE and MR. JUSTICE PECKHAM concur in this dissent.