## McLOUGHLIN v. COMMISSIONER OF INTERNAL REVENUE.
### No. 255.

Circuit Court of Appeals, Second Circuit.

May 3, 1937.

Lord, Day &·Lord, of New York City (Bernhard Knollenberg, Jesse Hoyt, ·and Joseph W. Wyatt, .both of New York City, of counsel), for petitioner Edward Mc-Loughlin.

James W. Morris, U. S. Asst. Atty. Gen., and Sewall Key and Berryman 'Green, Sp. Assts. to Atty. Gen., for respondent.

John J. Bennett, Jr., N. Y. Atty. Gen., Henry Epstein, Sol. Gen., of Albany, N. Y., and John F. X. McGohey, Colin McLennan, and John C. Crary, Asst. Attys. Gen., amici curiæ.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a petition by a taxpayer employed in the Insurance Department of the State of New York at an annual salary of $5,125 to review an order of the Board of Tax Appeals holding his salary for 1932 income subject to taxation under the Revenue Act of that year. In 1930 the taxpayer was appointed by the Superintendent of Insurance to act as legal counsel in the Liquidation Bureau of the Insurance Department and worked daily in that capacity from 9 a. m. to 5 p. m. Outside of these office hours he did a certain amount of legal work for personal clients which, in 1923, yielded $1,410 less $570 office expenses.

The Liquidation Bureau was created in 1909 and in 1932 was in charge of a Special Deputy Superintendent of Insurance who was a civil service employee with a salary paid by the state. During the year 1932 the. Bureau had from 100 to 400 employees, including three Assistant Special Deputy Superintendents, attorneys working on legal matters, bookkeepers, stenographers, adjusters, and accountants.

Under the New York Insurance Law (Consol.Laws N.Y. c. 28) § 400 et seq., the Superintendent of Insurance may apply to the court for an order taking over the assets of insurance companies for the purpose of liquidating, rehabilitating, or conserving their business. When such an order is made all of the work necessary for liquidation, rehabilitation, or conservation is performed by the Bureau. When an order for liquidation of a company is made, its charter is dissolved and no new business is transacted but the assets are liquidated, the claims of creditors adjudicated, and dividends are declared to those persons entitled to share in the assets of a defunct insurance company. When a company is rehabilitated by the Bureau, its property is returned to it so that it may resume business under its own management.

· The business of the Bureau during 1932 was liquidation to which the taxpayer devoted 90 per cent. of his time during

that year. The remaining 10 per cent. was devoted to legal problems of the Bureau as a whole, such as drafting a new article 11 of the Insurance Law relating to "Rehabilitation, Liquidation, Conservation and Dissolution of Delinquent Insurers."

Among the facts stipulated before the Board of Tax Appeals were the following:

"8. In the year 1932 the Department of Insurance had a general bank account with the Bank of New York & Trust Company at 48 Wall Street, New York City. The expenses of the Bureau, including all salaries, were paid by checks drawn on this bank. This account was referred to as the 'Wash Account,' as simultaneously with the drawing of checks for salaries, etc., other checks were drawn on the bank accounts of the companies in liquidation and deposited with the Bank of New York & Trust Company to equalize the amount drawn out therefrom to meet the salaries and other overhead expenses of the Bureau. In drawing checks against the various companies in liquidation to meet petitioner's compensation and the other expenses of the Bureau, checks would be drawn by an Assistant Special Deputy of Insurance (as representative of the Superintendent of Insurance) on the bank accounts in which the deposits of the various companies were maintained. Each company coming under the jurisdiction of the Bureau kept its separate bank account, and the Superintendent of Insurance (having charge of all the assets of such company) was in a position to draw checks on the account.

"9. Petitioner's compensation for 1932 was prorated to the companies in proportion to the time devoted by him in connection with the respective companies on the legal affairs of which he was engaged. Petitioner's time devoted to the affairs of one particular company, would be charged against such company. Petitioner's time devoted to the general legal problems of the Department, would be prorated among the various companies under a formula designed to charge general administration expenses of the Department to the companies in liquidation in proportion to the aggregate compensation of those engaged in the specific liquidation of the respective companies.

"10. Petitioner's compensation during 1932 was paid bi-monthly but was computed on an annual basis. Petitioner was paid by check, a form of the check used being annexed hereto as Exhibit 'C.' Petitioner did not receive any additional compensation from the Insurance Department by way of special fees or otherwise in addition to his fixed compensation. His yearly compensation was determined by the Superintendent and the compensation did not vary in accordance with the volume of legal matters handled by him during the year. Petitioner's entire compensation for 1932 was paid from funds of insurance companies being liquidated by the Superintendent of Insurance.

"11. In the budget of the Superintendent of Insurance there appeared an item called the Reserve Fund, for the use of the Superintendent in liquidating insurance companies whose assets were not sufficient to pay the costs of liquidation. In the budgets submitted for the fiscal years ending June 30, 1931, 1932 and 1933, the amount of the Reserve Fund was $5,000.00. It does not appear that any of the compensation paid to the petitioner during the year 1932 was derived from this fund."

The salary the taxpayer received for his work in the Liquidation Bureau was held taxable by the Commissioner of Internal Revenue. The action of the Commissioner was sustained by the Board of Tax Appeals on the ground that the taxpayer was not "an employee of the state engaged in carrying on an essential governmental function and that in any event the fact of his compensation being from private funds and not from those of the state precludes the allowance of exemption from Federal income tax."

The question presented for our decision is whether the taxpayer's compensation as counsel for the Liquidation Bureau and received through such Bureau is subject to federal income tax.

Section 22 of the Revenue Act of 1932, 26 U.S.C.A. § 22 and note, provides that:

"(a) *General definition.*—'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid."

Treasury Regulations 77 contained the following provisions:

"Art. 643. *Compensation of State officers and employees.*—Compensation paid to its officers and employees by a State or political subdivision thereof for services

rendered in connection with the exercise of an essential governmental function of the State or political subdivision, including fees received by notaries public commissioned by States, is not taxable. Compensation received for services rendered to a State or political subdivision thereof is included in gross income unless (a) the person receives such compensation as an officer or employee of a State or political subdivision, and (b) the services are rendered in connection with the exercise of an essential governmental function. The commissions of receivers appointed by State courts are taxable."

■ It is unnecessary for us to deal with the question as to whether the taxpayer when acting as counsel for the Liquidating Bureau was engaged by the state in the exercise of essential governmental powers. It may well be that his activities were essential, like those of a receiver. Jacoby v. Bond & Mortgage Guarantee Co. (C.C.A.) 72 F.(2d) 420, 423. Irrespective of any such relation to the state, there can be no exemption from federal taxation where, as here, taxation would result in no burden upon the governmental power of the state. That the existence of a burden is the test was the view adopted by the Supreme Court in sustaining the validity of a transfer tax by a state upon United States bonds in Plummer v. Coler, 178 U.S. 115, 20 S.Ct. 829, 44 L.Ed. 998, and in upholding a federal tax upon an estate which included state municipal bonds in Greiner v. Lewellyn, 258 U.S. 384, 42 S. Ct. 324, 66 L.Ed. 676. See, also, Snyder v. Bettman, 190 U.S. 249, 253, 254, 23 S.Ct. 803, 47 L.Ed. 1035; United States v. Perkins, 163 U.S. 625, 16 S.Ct. 1073, 41 L. Ed. 287; and Fox Film Corp. v. Doyal, 286 U.S. 123, 128, 52 S.Ct. 546, 76 L.Ed. 1010. By the same reasoning it was held that profits realized by an investor from a sale of municipal bonds were properly taxed under the Revenue Act of 1924 (43 Stat. 253), Willcuts v. Bunn, 282 U.S. 216, 51 S. Ct. 125, 127, 75 L.Ed. 304, 71 A.L.R. 1260, and that a nondiscriminatory privilege tax by the State of Georgia on the business of licensing copyrighted motion pictures was lawful. Fox Film Corp. v. Doyal, 286 U.S. 123, 52 S.Ct. 546, 76 L.Ed. 1010. In his opinion in Willcuts v. Bunn, Hughes, C. J., said: "The limitation of this principle to its appropriate applications is also important to the successful working of our governmental system. The power to tax is no less essential than the power to borrow money, and, in preserving the latter, it is not necessary to cripple the former by extending the constitutional exemption from taxation to those subjects which fall within the general application of non-discriminatory laws, and where no direct burden is laid upon the governmental instrumentality, and there is only a remote, if any, influence upon the exercise of the functions of government."

■ In the case at bar the state in the exercise of its police power is merely using its governmental facilities without expense to itself to aid a private corporation in liquidating insolvent insurance companies in the same way in which chancery receivers or statutory receivers were formerly employed. It is clearly subjected to no burden in any exercise of its sovereignty.

■ Counsel for the appellant argues, however, that the only situation where the question of a burden upon the public treasury becomes a relevant factor in determining whether there is a tax exemption is where an independent contractor is employed by governmental authority, such as the consulting engineer engaged by a state as to projects for water supply and sewage disposal whose salary was held taxable in Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384. But no such limitation of the field in which exemptions are granted because the tax is not a burden is justifiable. The origin of such exemptions is found in the statements of Marshall, C. J., in a case where state taxation of national banks was involved, that "the power to tax involves the power to destroy," and that there is "no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." McCulloch v. Maryland, 4 Wheat. 316, 431, 436, 4 L.Ed. 579. Whatever may be the justification for applying such a rule to taxes which are discriminatory the reason ceases if, as here, the tax in question is ex hypothesi not a burden upon the public treasury. The remote possibility that a tax may affect a state or the United States is not enough to create an exemption. Burnet v. A. T. Jergins Trust, 288 U.S. 508, 53 S.Ct. 439, 77 L.Ed. 925; Greiner v. Lewellyn, 258 U. S. 384, 42 S.Ct. 324, 66 L.Ed. 676; Baltimore Shipbuilding & Dry Dock Co. v. Bal-

timore, 195 U.S. 375, 25 S.Ct. 50, 49 L.Ed. 242; Snyder v. Bettman, 190 U.S. 249, 23 S.Ct. 803, 47 L.Ed. 1035; Plummer v. Coler, 178 U.S. 115, 20 S.Ct. 829, 44 L.Ed. 998; United States v. Perkins, 163 U.S. 625, 16 S.Ct. 1073, 41 L.Ed. 287; Union P. Railroad Company v. Peniston, 18 Wall. 5, 21 L.Ed. 787; First National Bank v. Commonwealth of Ky., 9 Wall. 353, 19 L.Ed. 701; Thomson v. Union Pacific Railroad, 9 Wall. 579, 19 L.Ed. 792; Veazie Bank v. Fenno, 8 Wall. 533, 19 L.Ed. 482.

■ The situations in which exemption from taxation has not been allowed are: (1) Where a state has departed from its usual governmental functions and engaged in business enterprises for the public benefit. Helvering v. Powers, 293 U.S. 214, 55 S.Ct. 171, 79 L.Ed. 291; State of Ohio v. Helvering, 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307; State of South Carolina v. United States, 199 U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261, 4 Ann.Cas. 737. (2) Where persons subjected to taxation are neither officers nor regular employees of the state, but are socalled independent contractors. Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384.

We think the justification for denying exemption in each category is that the tax imposes no real burden upon, or impediment to a normal exercise of sovereign power. There will be differences of opinion as to the extent of protection needed against the aggressions of one governmental unit upon another, but there can be no warrant for allowing exemption from a tax which does not burden or impede the exercise of any governmental function.

We find no decisions by the Supreme Court which indicate that employees who receive their compensation from the avails of a privately owned corporation that is being liquidated by the state are exempt from taxation. On the contrary, the recognition of such an exemption would seem to withdraw income from taxation under a fanciful theory of sovereign immunity entirely inapplicable to a federal system of government. Indeed, the general allowance of exemptions in similar situations might easily exhaust large sources of income in times of financial depression.

It is argued that our views are contrary to the recent decisions of the Supreme Court in People of State of New York ex rel. Rogers v. Graves, 299 U.S. 401, 57 S.Ct. 269, 270, 81 L.Ed. ——, and Brush v. Commissioner, 57 S.Ct. 495, 81 L.Ed. ——. In the first case the salary of the general counsel for the Panama Railroad Company was held exempt from taxation on the ground that the company was a wholly owned instrumentality of the United States "engaged in maintaining, operating and protecting the Panama Canal." It was said by Sutherland, J., writing for the court, that: "The primary purpose of the enterprise being legitimately governmental, its incidental use for private purposes affords no ground for objection." In the second case the salary of the chief engineer of the Bureau of Water Supply of New York City, appointed under statutory authority with a fixed annual salary of $14,000, was held to be immune from federal income tax because the city in supplying water was exercising an essential governmental function. In each instance it could properly be said that, within the old rule, there was a burden upon a governmental enterprise and not, as here, a taxation of the salary of a state employee engaged in liquidating a private corporation and paid out of its property.

Other decisions strongly relied on by the appellant are Therrell v. Commissioner, 88 F.(2d) 869, 873 (C.C.A.5), and Hoskins v. Commissioner, 84 F.(2d) 627 (C.C.A.5). In the Therrell Case the question was whether bank liquidators who were appointed by the Comptroller of the State of Florida to take charge of the assets of insolvent banks and were subject to dismissal by him, and whose compensation was to be fixed by him at an amount not exceeding 5 per cent. of the cash collected, were subject to taxation. A majority of the court held that the salary of such a liquidator was not subject to tax by the Federal Government because he was an instrumentality appointed by the state to aid in the administration of its banking laws and to do justice to those interested in an insolvent bank. Judge Hutcheson dissented on the ground that the liquidator was not an officer of the state and drew no salary therefrom and that: "He merely undertakes for and under the appointment of a Comptroller, as a court receiver does for and under the appointment of a court, to handle specific matters of conservation and liquidation when appointed to do so." Any distinction between the Therrell decision and the case at bar is tenuous but,

with all respect, we feel obliged to differ with the decision of the majority.

In the Hoskins Case a school district operated a cafeteria for the benefit of its pupils and teachers who alone were allowed to patronize it and were required to pay for food but only at cost. The compensation of the person managing the cafeteria was held free from federal taxation for the reason that such taxation would be an interference with a state governmental function. If this decision can be justified, it must be only on the theory that a cafeteria was part of the total expense of the district and that the salary of the taxpayer, though payable out of the receipts of the cafeteria, was not to be allocated to that source.

We do not suggest that the Supreme Court would hold that because a state official received his compensation out of fees, a federal tax upon it would not be an interference with a state function. But whatever may be said of some situations where compensation is not derived directly from the public treasury, we are persuaded that a liquidating agent paid wholly out of the property of an insolvent is not entitled to exemption.

Order affirmed.