UNITED STATES OF AMERICA AND THE HOWARD SAVINGS INSTITUTION, EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF WILLIAM O. FLORSTEDT, DECEASED, APPELLANTS, v. WILLIAM KINGSLEY, ACTING DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENT.

IN THE MATTER OF THE TRANSFER INHERITANCE TAX ASSESSMENT IN THE ESTATE OF WILLIAM O. FLORSTEDT, DECEASED.

Argued September 23, 1963—Decided November 4, 1963.

Mr. *John B. Jones, Jr.,* of the District of Columbia Bar, Assistant Attorney General, argued the cause for appellant United States of America (*Mr. David M. Satz, Jr.,* United States Attorney and *Mr. Richard A. Levin,* Assistant United States Attorney; *Mr. Louis F. Oberdorfer,* Assistant Attorney General, *Mr. Lee A. Jackson, Mr. I. Henry Kutz* and *Mr. Thomas A. Skornia,* of the District of Columbia Bar, attorneys).

Mr. *John F. Connolly* argued the cause for appellant The Howard Savings Institution.

Mr. *Joseph A. Jansen,* Deputy Attorney General of New Jersey, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

FRANCIS, J.   William O. Florstedt, a resident of Ocean Grove, Monmouth County, New Jersey, died testate on December 9, 1961. His will was duly probated, and by its terms the residuary estate was devised and bequeathed to the "United States Government * * * to be used as the * * *

Government may see fit for the national defense of the country." The residuary estate was valued at $138,611.21, and the Acting Director of the Division of Taxation determined that it was subject to tax under the New Jersey Transfer Inheritance Tax law, *N. J. S. A.* 54:34–1a. Accordingly, a tax of $10,883.42 was assessed against the United States and paid under protest pending appeal to the Superior Court, Appellate Division. We certified the appeal on our own motion before it was reached for argument there.

The controlling statute, *N. J. S. A.* 54:34–1, provides that:

"* * * a tax shall be and is hereby imposed at the rates set forth in section 54:34–2 of this Title upon the transfer of property, real or personal, of the value of five hundred dollars ($500) or over, or of any interest therein or income therefrom, in trust or otherwise, to or for the use of any transferee, distributee or beneficiary in the following cases:

a. Where real or tangible personal property situated in this State or intangible personal property wherever situated is transferred by will or by the intestate laws of this State from a resident of this State dying seized or possessed thereof. * * *"

Subsections a, b and c of *N. J. S. A.* 54:34–2 fix the rates of taxation for transfers to certain relatives of a decedent and to religious or charitable institutions. The tax in this instance was assessed under subsection d which taxes all other transfers on any amount up to $900,000 at 8%. The United States not only asserts an immunity from the entire assessment but contends also that even if a tax may be imposed, the rate should be that applicable to transfers of property passing in trust for an exclusively charitable use or purpose, namely, 5%. We shall deal with the latter issue in due course.

▐ There is no doubt that the United States has the right and the authority to receive the Florstedt legacy as an incident of its national sovereignty and to use the proceeds in the discharge of the specified governmental function. Nor can it be questioned that under the supremacy clause of the Federal Constitution, Article 6, and the almost legendary interpretation thereof written by Chief Justice Marshall in *M'Culloch v. Maryland,* 4 *Wheat.* 316, 17 *U. S.* 316, 4 *L. Ed.* 579 (1819),

a state has no power by taxation or otherwise to impede or burden the ordinary functions of the national government. So the United States claims here that since the inheritance tax has been spoken of by the New Jersey courts as a succession tax, a tax on the privilege of succession, and operates ultimately in reduction of the testamentary legacy, it is a direct tax on the property of the United States and constitutes an improper curtailment of the right of the national government to receive that form of revenue. The contention cannot be accepted; it attaches too much significance to descriptive labels, and ignores basic concepts which appear to have long since achieved recognition at both state and national levels.

The authority to control, permit, regulate and condition the testate and intestate transmission and devolution of a domiciliary's property within the jurisdiction of a state resides in the state. The doctrine has been recognized in a long line of cases that such authority is part of the residue of sovereignty retained by the states, and insured by the Tenth Amendment of the Federal Constitution. *United States v. Fox,* 94 *U. S.* 315, 24 *L. Ed.* 192 (1877); *United States v. Perkins,* 163 *U. S.* 625, 16 *S. Ct.* 1073, 41 *L. Ed.* 287 (1896); *Magoun v. Illinois Trust & Savings Bank,* 170 *U. S.* 283, 18 *S. Ct.* 594, 42 *L. Ed.* 1037 (1898); *Plummer v. Coler,* 178 *U. S.* 115, 20 *S. Ct.* 829, 44 *L. Ed.* 998 (1900); *Snyder v. Bettman,* 190 *U. S.* 249, 23 *S. Ct.* 803, 47 *L. Ed.* 1035 (1903); *Maxwell v. Bugbee,* 250 *U. S.* 525, 40 *S. Ct.* 2, 63 *L. Ed.* 1124 (1919); *United States v. Burnison,* 339 *U. S.* 87, 70 *S. Ct.* 503, 94 *L. Ed.* 675 (1950). The right of a citizen to dispose of his property by will has always been deemed a legislative creation. The state may regulate the manner and terms upon which his property, both real and personal, within its jurisdiction may be transmitted by will or by inheritance. It may prescribe who shall take, and who shall not be capable of taking, the property. And the privilege of transmission of property by will or by intestacy may be made subject to such terms as in the judgment of the state will serve the public good. Accordingly, exercise of the privilege may

be conditioned on the payment of taxes. In effect, the state says to a testator: "You may devise or bequeath your property but in return for the privilege of doing so, a tax must be paid, the amount of which shall depend on the value of the property you devise or bequeath and on the relationship to you of the devisee or legatee you select."

In the ordinary sense, then, the tax is not on the property passing under the will, nor is it on the person receiving it. The tax is the price laid upon the testator in return for the right of disposition. It represents the legislative intention that a person taking advantage of the right conferred upon him shall pay a certain premium for its enjoyment. The burden comes into being and attaches itself to the testator's property immediately upon his death. It has been described as "a debt exacted by the state for protection afforded during the lifetime of the decedent." *Plummer v. Coler, supra* (178 *U. S.,* at *p.* 138, 20 *S. Ct.,* at *pp.* 837, 838, 44 *L. Ed.* 998). And so the legacy or devise does not pass to the beneficiary until it has yielded its contribution to the state. See, *R. S.* 54:35-2, 6. It becomes his property only after it has "suffered a diminution" in the amount of the tax. *United States v. Perkins, supra* (163 *U. S.,* at *pp.* 628, 630, 16 *S. Ct.,* at *pp.* 1074, 1075, 41 *L. Ed.* 287).

The United States suggests that because the New Jersey cases speak of the inheritance tax in question as being on the privilege of succession, *Hartford v. Martin,* 122 *N. J. L.* 283, 286 (*E. & A.* 1939), and since they declare that the tax comes out of the bequest to the legatee, *In re Roebling's Estate,* 89 *N. J. Eq.* 163 (*Prerog.* 1918), it is in fact a tax on the property of the federal sovereignty and therefore violates the supremacy clause. More specifically, the claim is that the State is reaching into the hands of the national sovereign and extracting property which came there in the normal and legitimate exercise of a function of government. But, as has been indicated earlier, the claim seeks to pour an unintended significance into the description of the tax. As the United States Supreme Court said in *United States v. Burnison, supra,* the

"argument fails to recognize that the state acts upon the power of its domiciliary to give and not on the United States' power to receive." 339 *U. S.*, at *p.* 91, 70 *S. Ct.*, at *pp.* 505–506, 94 *L. Ed.* 675. Moreover, the same court, in answer to a similar contention in *Plummer v. Coler, supra,* approved the statement of the New York Court of Appeals in *In re Sherman,* 153 *N. Y.* 1, 46 *N. E.* 1032, 1033 (1897) that:

" '* * * The tax imposed is not, in a proper sense, a tax upon the property passing by will, under the statutes of descents or distribution. It is a tax upon the right of transfer by will, or under the intestate law of the State. Whether these laws are regarded as a limitation on the right of a testator to dispose of property by will, or upon the right of devisees to take under a will, or the right of heirs or next of kin to succeed to a property of an intestate, is immaterial. The so-called tax is an exaction made by the State in the regulation of the right of devolution of property of decedents, which is created by law, and which the law may restrain or regulate. Whatever the form of the property, the right to succeed to it is created by law, and if the property consists of government securities, the transferee derives his right to take [it] * * * under the laws of the State, and the State by these statutes makes the right subject to the burden imposed.' " 178 *U. S.*, at *p.* 124, 20 *S. Ct.*, at *p.* 832, 44 *L. Ed.*, at *p.* 998.

■ The real significance of the tax is that it vests in the state immediately upon the death of the testator. Its effect is that by operation of law, the amount due is severed immediately from the remainder of the estate and cannot pass either by bequest or intestacy. The sum severed is measured by the statute at rates fixed according to the relationship of the beneficiary to the testator or intestate, or his status as legatee or devisee, if unrelated. And the particular sums, as so measured, are deductible from each legacy or devise before it is paid to the beneficiary. Thus, although the tax operates incidentally to reduce a legatee's share, the sum deducted never became his property. It was removed automatically at the testator's death by force of the statute, and ownership of that portion of the estate never vested in him. Only on that condition did the legislature consent to the bequest. See *Board of Regents of the University of Wisconsin v. State,* 404 *Ill.*

193, 88 *N. E. 2d* 489 (*Sup. Ct.* 1949), appeal dismissed 339 *U. S.* 906, 70 *S. Ct.* 571, 94 *L. Ed.* 1355 (1950).

The leading case in this area is *United States v. Perkins, supra.* There, a New York resident devised and bequeathed all his estate to the United States. The state assessed an inheritance tax which resulted in the same controversy as is presented in this case. The assessment was sustained in the state courts and in the United States Supreme Court. The thesis was that the tax "[was] not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it [was] not until it ha[d] yielded its contribution to the state that it [became] the property of" the national government. Consequently, the tax was not a direct imposition on the United States or its property. It was simply an exercise of the right of the state to require a contribution to the public treasury before the bequest took effect.

*Perkins* is particularly applicable to our case, not only because the issue under discussion was decided there, but also because the language of the New York statute is substantially the same as that of New Jersey.

We have found no departure from the *Perkins* decision in the 67 years that have intervened since it was announced. All of the United States Supreme Court cases cited above have approved it.

For example, in *Plummer v. Coler* (1900), the State of New York imposed an inheritance tax on the decedent's estate, part of which consisted of United States bonds. The executor objected pointing out that by congressional enactment such bonds were expressly exempted from any form of state taxation. He contended that the tax was unconstitutional because a state cannot impair the borrowing power of the United States or tax the operations or property or means employed to carry its powers into effect. Quoting *Perkins* and other pertinent authorities, however, the United States Supreme Court declared the tax was not on the bonds themselves, but rather on the privilege granted by the state to the owner of the bonds to direct their descent by will or to permit them

to descend by the statute concerning devolution in case of intestacy.

Again, largely on the strength of *Perkins,* in *Snyder v. Bettman* (1903), the court sustained a federal succession tax based in part on a legacy to a municipality which, under the will, was to be used to improve and beautify a local public park. It was argued that the national sovereignty has no power to tax the governmental attributes of the states or their municipalities, which are agencies of the states. The situation was the converse of that present in *Perkins,* but the basic principle involved was the same, and it was regarded as controlling. The United States Supreme Court recognized that payment of a state inheritance tax is a condition properly annexed by the state to the privilege granted to a testator to transfer his property by will, and that under the Constitution the devolution of property is determined by the laws of the states. But, it held with respect to the United States that an independent power existed to impose a succession tax. That power derived from Article I, section 8 of the Federal Constitution which confers general taxing authority on the national government. The importance of the *Perkins* rule in the framework of the case was its use to support the conclusion that the succession tax was not on the municipality as an agency of the state or on its property. After noting the tax is collected from the property while in the hands of the executor, who is required to liquidate it "before payment and distribution to the legatees," the court said it could not be regarded "as a tax upon the municipality, though it may operate incidentally to reduce the bequest by the amount of the tax." The opinion says further:

"Having determined, then, that Congress has the power to tax succession; that the states have the same power, and that such power extends to bequests to the United States, it would seem to follow logically that Congress has the same power to tax the transmission of property by legacy to states or their municipalities, and that the exercise of that power in neither case conflicts with the proposition that neither the Federal nor the state government can tax the prop-

erty or agencies of the other, since, as repeatedly held, the taxes imposed are not upon property, but upon the right to succeed to property." 190 *U. S.*, at *p.* 254, 23 *S. Ct.*, at *p.* 805, 47 *L. Ed.* 1035.

More recently, *United States v. Burnison* (1950) involved an attack on the constitutionality of a California statute which was construed by the state courts to prohibit domiciliaries of that state from making testamentary bequests to the United States. The national government argued the enactment violated the supremacy clause of the Constitution because it infringed upon its inherent sovereign power to receive testamentary gifts. In rejecting the contention, the United States Supreme Court said it failed to recognize that the state acts upon the power of its domiciliary to give and not on the United States' power to receive. 339 *U. S.*, at *p.* 91, 70 *S. Ct.*, at *pp.* 505, 506, 94 *L. Ed.* 675. The court accepted the proposition established in *United States v. Fox, supra,* and in *Perkins* that within very broad limits the power to control the transmission of property by will is in the state and that a domiciliary must make his devises or bequests within the limitations of the state statute or not at all. (For an example of possible qualification on such authority, see *Clark v. Allen,* 331 *U. S.* 503, 67 *S. Ct.* 1431, 91 *L. Ed.* 1633 (1947).)

On the same day as *Burnison* was decided, the United States Supreme Court, in a terse *per curiam* opinion, dismissed the appeal in *Board of Regents of the University of Wisconsin v. State, supra.* It simply said: "The appeal is dismissed. *United States v. Perkins,* 163 *U. S.* 625, 16 *S. Ct.* 1073, 41 *L. Ed.* 287." The summary treatment is a plain indication of the undiminished vigor of the *Perkins* doctrine.

In *Board of Regents of the University of Wisconsin,* a resident of the State of Illinois had died testate, leaving the residue of his estate to the University. The University is a state-operated corporation and concededly an instrumentality of the State of Wisconsin. The bequest, therefore, was in substance a gift to that state. Illinois assessed an inheritance tax under its statute which said that "A tax shall be and is hereby imposed upon the transfer  *  *  *  to persons, insti-

tutions or corporations, not hereinafter exempted, * * *." *Ill. Rev. Stat.* 1943, c. 120, *par.* 375. The assessment was assailed as unconstitutional on the ground that one state cannot burden another sovereign state with a tax which interferes with the latter's governmental functions. The Supreme Court of Illinois, citing *United States v. Perkins, Plummer v. Coler, United States v. Fox* and *Snyder v. Bettman,* among other cases, overruled the attack. The court said the rule was settled that an Illinois legacy is a creature of the State of Illinois, that the state's right to the tax vests at the moment of the testator's death, and is extracted from the legacy before it passes to the legatee. Therefore, the tax assessed was not a direct burden on the University or State of Wisconsin, even though it incidentally reduced the gift. 88 *N. E.* 2*d,* at *p.* 493.

In our judgment, the *Perkins* case and its progeny are applicable in the present controversy, and dispositive of the argument that the New Jersey tax imposes an unconstitutional burden on the United States.

█ The constitutionality of the Inheritance Tax Act is challenged further on the ground that its exemption clause discriminates against the United States. The clause, *N. J. S. A.* 54:34–4(a) exempts "[p]roperty passing to or for the use of the State of New Jersey, or to or for the use of a municipal corporation within the State or other political subdivision thereof, for exclusively public purposes." The claim is that the preference of the State for itself and its municipalities or other political subdivisions in cases of testate or intestate transfers of property to them for public purposes constitutes an invidious discrimination against the United States when such transfers are made to it for the same purposes. The government does not place its reliance upon the Fourteenth Amendment of the Federal Constitution. Rather it rests its case again upon the supremacy clause, saying that the legislative favoritism has the effect of imposing a burden on the national sovereignty, while relieving the State and its subdivisions of a similar burden.

The Acting Director suggests that even if the exemption of the State and its subdivisions were unconstitutionally discriminatory in the respect claimed, the position of the United States would not be improved. He urges that such a declaration of invalidity by this Court would simply mean elimination of the exemption, that is, excision of subsection (a) of *N. J. S. A.* 54:34–4, leaving the remainder of the enactment in existence and operable. In this event both the State and its instrumentalities, as well as the national sovereignty, would be subject to tax on testamentary transfers. Although the suggestion is persuasive (see *L.* 1909, *c.* 228, *fn.* 27, *N. J. S. A.* 1:1–10), we put it aside to deal with the basic question of discrimination.

The discrimination argument overlooks what has already been said with respect to the right of the State to control the testate or intestate devolution of its domiciliary's property. There is nothing in the Federal Constitution which forbids the legislature of a state to limit, condition or even abolish the power of testamentary disposition of property within its jurisdiction. *Irving Trust Co. v. Day,* 314 *U. S.* 556, 562, 62 *S. Ct.* 398, 86 *L. Ed.* 452, 457 (1942); *United States v. Fox, supra; United States v. Perkins, supra.* As the United States Supreme Court said in *Mager v. Grima,* 8 *How.* 490, 493–494, 49 *U. S.* 490, 493–494, 12 *L. Ed.* 1168, 1170 (1850), where Louisiana, by statute, imposed a transfer inheritance tax on aliens who became legatees under the will of a domiciliary of the state:

"Now the law in question is nothing more than an exercise of the power which every state and sovereignty possesses, of regulating the manner and term upon which property real and personal within its dominion may be transmitted by last will and testament, or by inheritance; and of prescribing who shall and who shall not be capable of taking it. * * * And if a state may deny the privilege altogether, it follows that, when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy."

Obviously, the United States would have no claim at all but for the New Jersey statute which conferred on decedent the

privilege of selecting the recipients of his bounty. As the earlier discussion herein makes plain, the tax is the price exacted by the State, in return for the privilege, and when Florstedt took advantage of the privilege by drawing his will, a conclusive agreement to assume the prescribed tax arose by operation of law. Thus, as *United States v. Burnison* notes (339 *U. S.,* at *p.* 91, 70 *S. Ct.,* at *pp.* 505, 506, 94 *L. Ed.* 675), the state acts on the power of the domiciliary to give, not on the power of the United States to receive.

We find nothing in the supremacy clause which so limits the broad power of a state to regulate testamentary disposition of property as to bar exemption from the tax for transfers to itself, while such transfers to the federal government are made taxable. The same conclusion would apply to exemptions for municipalities and other political subdivisions. These bodies are representatives of the state and instrumentalities of the state government, exercising the governmental powers intrusted to them by the legislature, and as such, for the purpose under consideration here, may be regarded as in the same category as the state. *Snyder v. Bettman, supra* (190 *U. S.,* at *p.* 256, 23 *S. Ct.,* at *pp.* 805, 806, 47 *L. Ed.* 1035) (dissent); *Camden County v. Pennsauken Sewerage Auth.,* 15 *N. J.* 456 (1954).

The discrimination argument advanced here was made in the *Burnison* case and disposed of adversely by the United States Supreme Court. There a California statute permitted its domiciliaries to make testamentary gifts to the state and to its counties and municipalities, but banned such gifts to the United States. The statute was assailed on the ground that under the supremacy clause, the national government cannot be given less advantageous treatment than the state with respect to the right to receive testamentary bequests. In disposing of the contention, the court reaffirmed the view expressed in 1876 in *United States v. Fox* that the power to control testamentary gifts was in the state and therefore a person must make such gifts within the limitations of the statute or he cannot make them at all. 339 *U. S.,* at *p.* 91,

*70 S. Ct.*, at *pp.* 505, 506, 94 *L. Ed.* 675. It went on to say that nothing could be found "in the Supremacy Clause which prohibits the state from preventing its domiciliary from willing property to the Federal Government." And:

"In a sense, of course, the United States is being treated differently from California, and differences and distinctions in a state's treatment of persons are frequently claimed to be discriminatory in violation of the Equal Protection and Privileges and Immunities Clauses of the Fourteenth Amendment. But such differences and distinctions, even when applied to persons clearly protected by the Fourteenth Amendment, are not in themselves unconstitutional. It is only when the variations are arbitrary and without reasonable legal basis that an unconstitutional discrimination occurs. A long line of decisions has molded this judicial concept. Thus although we should make the somewhat dubious assumption that the United States must receive equal protection under the Fourteenth Amendment, there is no constitutional violation. California's decision to permit only itself and its subordinate municipalities to be unlimited governmental beneficiaries under the wills of its domiciliaries is based upon a permissible distinction. It is justified by reason of the State's close relationship with its residents and their property. A state may by statute properly prefer itself in this way, just as the states have always preferred themselves in escheat." 339 *U. S.*, at *p.* 95, 70 *S. Ct.*, at *pp.* 507, 508, 94 *L. Ed.* 675.

In our judgment, it follows from *Burnison* that if a state can prohibit bequests to the federal government entirely while permitting them to itself, it can impose tax limitations on such transfers to the one and exempt the other therefrom.

Finally, the United States asserts that the bequest, if taxable, should be treated as property passing in trust "for an exclusively * * * charitable use or purpose," and therefore taxable at 5% rather than 8% as assessed. *N. J. S. A.* 54:34–2(b).

The Director concedes the existence of authority for and against the government's position. 14 *C. J. S., Charities,* § 13, *p.* 442; and compare *United States v. Perkins,* 163 *U. S.*, at *p.* 631, 16 *S. Ct.*, at *p.* 1076, 41 *L. Ed.* 287; *People ex rel. Holland Coal Co. v. Isaacs,* 22 Ill. 2d 477, 176 *N. E.* 2d 889, 892 (*Sup. Ct.* 1961) with *Russell v. Allen,* 107 *U. S.* 163, 170–171, 2 *S. Ct.* 327, 27 *L. Ed.* 397, 400 (1883);

*Girard Trust Co. v. Russell,* 179 *F.* 446 (3 *Cir.* 1910), affirming 171 *F.* 161 (*E. D. Pa.* 1909); *Noice v. Schnell,* 101 *N. J. Eq.* 252 (*E. & A.* 1927), cert. denied *sub. nom. Allison v. Schnell,* 276 *U. S.* 625, 48 *S. Ct.* 304, 72 *L. Ed.* 738 (1927); *New Jersey Title Guarantee & Trust Co. v. Smith,* 90 *N. J. Eq.* 386 (*Ch.* 1919); *Lanning v. Commissioners of Public Instruction of the City of Trenton,* 63 *N. J. Eq.* 1 (*Ch.* 1902); *In re Pfizer,* 33 *N. J. Super.* 242 (*Ch. Div.* 1954), affirmed 17 *N. J.* 40 (1954). As the cited cases indicate, New Jersey appears to favor the view that gifts of the type involved should be considered as being for charitable use. In our judgment, that view represents the sounder rule. A bequest to the United States to be used "for the national defense" obviously benefits the general public, the rich and the poor alike. It tends to reduce taxation and lessen the burdens of government. In these circumstances the United States ought to be treated as the recipient of a bequest for a charitable use and therefore the tax rate to be applied on the transfer should be 5% rather than 8%. See *Gredig v. Sterling,* 47 *F.* 2d 832 (5 *Cir.* 1931), cert. denied 284 *U. S.* 629, 52 *S. Ct.* 13, 76 *L. Ed.* 535 (1931); *Trustees of New Castle Common. v. Megginson,* 24 *Del.* 361, 77 *A.* 565 (*Sup. Ct.* 1910); *In re Graves Estate,* 242 *Ill.* 23, 89 *N. E.* 672, 24 *L. R. A., N. S.,* 283 (*Sup. Ct.* 1909); *Dickson v. United States,* 125 *Mass.* 311, 28 *Amer. Rep.* 230 (*Sup. Jud. Ct.* 1878); *Restatement* (Second), *Trusts,* § 373, *p.* 256 (1959); 10 *Am. Jur., Charities,* § 79, *p.* 641.

The tax assessment is modified accordingly, and, as modified, is affirmed.

*For modification*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.