WASHINGTON ASSOCIATION OF NEW JERSEY, RELATOR, v. ALBERT C. MIDDLETON, AS TREASURER OF THE STATE OF NEW JERSEY, ET AL., RESPONDENTS.

Argued October 5, 1932—Decided April 5, 1933.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and CASE.

For the relator, *Frank Bergen*.

For the respondents, *William A. Stevens*, attorney-general.

PER CURIAM.

This is a rule to show cause why a *mandamus* should not issue commanding the treasurer and comptroller of the state to pay to the relator the sum of $2,500 alleged to be due on April 1st, 1932.

A sufficient statement of the facts for present purposes is as follows:

In 1874, by *Pamph. L.* 1874, *p.* 1147, the relator was incorporated, and by section 7 of that act it was provided:

"7. And be it enacted, that so long as the building known as the Washington headquarters shall be open to the public free of charge, at all proper times; and so long as it shall be held as an historical building, within which all the people of New Jersey may deposit articles of interest connected with the men and events of our revolutionary struggle, the treasurer of this state shall pay to the president or treasurer of the Washington Association on the first days of April and November of each and every year, the sum of twelve hundred and fifty dollars, to be used by the trustees for the care,

maintenance and perpetuation of the headquarters, and the trustees shall render to the governor of this state on the first day of December, each year, an account of their expenditures made from the funds thus appropriated."

The relator kept and still keeps the headquarters open to the public, free of charge, in which all the people of the state may deposit articles of interest connected with the men and events of the revolutionary struggle; and since its incorporation, in addition to its original holdings, the relator has purchased three tracts of adjoining lands and has erected additional buildings.

Payments under section 7 of the above mentioned act were made until April, 1932.

By chapter 46 of the laws of 1931 (approved April 6th) the charter of the relator was amended, and, among other things, section 7 was re-enacted in its entirety with one exception, which exception was that the sum of $2,500 was increased to $5,000, semi-annual payments of $2,500 each to be made on the first days of April and November of each year. However, during the same session, in 1931, the legislature, in the annual Appropriation act, approved April 28th, 1931, in Item K-21, appropriated to the association only the sum of $2,500.

On December 3d, 1931, the treasurer of the state paid to the treasurer of the Washington Association the sum of $2,500. Therefore, when that payment was made the appropriation for the fiscal year of 1931-32 was exhausted and there remained in the hands of the treasurer no funds out of which a second payment could be made. The relator, in April, 1932, demanded payment of $2,500 from the state treasurer. The demand of the relator was refused for the reason as stated in relator's petition, namely, that payment could not be made in excess of available appropriated funds.

Perhaps it should also be noted that it appears that the relator had issued seven hundred and ninety-five shares of its capital stock, and pursuant to the provision of section 4 of its charter, two hundred and eighty-eight of such shares have been forfeited to the state.

Several interesting and fairly debatable questions have been argued which we find unnecessary to discuss, and, in the circumstances, unwise to determine in this proceeding, because of the view we take respecting the point made by the respondents that *mandamus* does not lie againts the treasurer and comptroller under the circumstances of this case.

As we have seen it appeared to those state officials that the amount specified to be paid in the 1931 amendment to the charter was withdrawn by the annual Appropriation act of that year (chapter 382, laws of 1931) effective July 1st. That annual Appropriation act contains appropriation of $2,500 only to the relator, and in section 3, at page 1206, provides that no money shall be drawn from the treasury except for objects specifically set forth in the act, except as to certain other sums of money mentioned in that section, none of which are applicable to the relator. It seems clear, therefore, that the treasurer and comptroller were justified in giving effect to that annual Appropriation act. The question whether it was competent for the legislature to thus in effect withdraw the order for payments contained in the earlier act of 1931, we think does not call for decision on this motion for *mandamus*. In the case of *Mooney* v. *Edwards*, 51 *N. J. L.* 479; 17 *Atl. Rep.* 973, Mr. Justice Garrison, in referring to those cases where *mandamus* proceedings will lie, said: "Stated in a general way, the distinction is, that the writ of *mandamus* will issue to compel performance, in a specified manner of ministerial duties, *so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of their performance, but that as to all acts or duties depending upon a jurisdiction to decide questions of law or to ascertain matters of fact, on the part of the officer or body at whose hands their performance is required, mandamus will not lie.*"

Upon the whole it seems clear that *mandamus* does not lie against the treasurer and comptroller under the circumstances of this case. The treasurer could not make payment of an amount in excess of available appropriated funds at the time the demand was made. Article 4, section 6, paragraph 2 of

the constitution of the State of New Jersey, reads: "No money shall be drawn from the treasury but for appropriations made by law." Pursuant to the above constitutional limitation the legislature passed an act entitled "An act concerning appropriation of money" (*Pamph. L.* 1895, *p.* 788), section 1 of which reads: "1. That from and after the first day of November, eighteen hundred and ninety-five, no money shall be drawn from the treasury unless it shall have been *explicitly appropriated by the annual Appropriation act* to the purpose for which it is drawn." The power of a subsequent legislature to disregard that statute, if it chose so to do, is not here involved, for it is plain that there was nothing in the 1931 legislation indicating any intention of direct, indirect or *pro tanto* repeal of the 1895 statute. Since the treasurer was without funds to satisfy the demand made by the relator, he could not make payment of the amount requested. *Mandamus* only lies to compel the performance of a duty and such duty must exist at the time of the application for the writ. The duty to be enforced must not only be a ministerial one, but it must be a duty which exists at the time when application for *mandamus* is made, and the obligation must be mandatory and final. *Mooney* v. *Edwards, supra.* The writ, under no circumstances, will issue to compel performance of an act forbidden by law. *Edward C. Jones Co.* v. *Guttenberg,* 66 *N. J. L.* 58; 48 *Atl. Rep.* 537; *Drew* v. *Flynn,* 83 *N. J. L.* 1; 84 *Atl. Rep.* 1061; *McAllister* v. *Atlantic City,* 90 *N. J. L.* 93; 100 *Atl. Rep.* 198. Manifestly, since the treasurer of a state is not authorized to pay a claim out of the general fund of the state because of the failure or refusal of the legislature of the state to provide for the payment of such claim by an appropriation, and since the constitution and the statute prohibit such payment of money, except by an appropriation made by law, *mandamus* is not the appropriate remedy under the circumstances; and, hence, the rule to show cause must be discharged.

If an appeal is desired counsel are given permission to so mold the pleadings that an appeal may be taken.