159 N.J. Super. 297 (1978)
387 A.2d 1239
ANDREW M. SMITH, JR., INDIVIDUALLY AND AS SURROGATE OF THE COUNTY OF MONMOUTH, APPELLANT,
v.
CLIFFORD GOLDMAN, STATE TREASURER; EDWARD HOFGESANG, COMPTROLLER; SIDNEY GLASER, DIRECTOR OF THE DIVISION OF TAXATION; BRENDAN T. BYRNE, GOVERNOR OF THE STATE OF NEW JERSEY; THE LEGISLATURE OF NEW JERSEY, AND THE STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 18, 1978.
Decided May 11, 1978.
*299 Before Judges MATTHEWS, CRANE and ANTELL.
Mr. Andrew M. Smith, Jr., argued pro se.
Mr. Peter D. Pizzuto, Deputy Attorney General, argued the cause on behalf of respondents (Mr. John J. Degnan, Attorney General, attorney; Mr. William F. Hyland, former Attorney General and Mr. Stephen Skillman, Assistant Attorney General, of counsel)
The opinion of the court was delivered by CRANE, J A.D.
This is an appeal from the denial of claims for payment from the State Treasury of a portion of the transfer inheritance taxes collected for the fiscal years ending June 30, 1976 and June 30, 1977 claimed to be due to the Treasurer of Monmouth County. Appellant Surrogate of Monmouth County bases his claim upon N.J.S.A. 54:33-10 which states:
After the close of each fiscal year the state comptroller shall draw his warrant on the state treasurer in favor of the county treasurer of each county for five per cent of the amount of tax collected under chapters 33 to 36 of this title (§ 54:33-1 et seq.), from property of resident decedents in the county during the fiscal year, as certified to the comptroller by the state tax commissioner, whereupon the same shall be paid out of the state treasury.
The claims for payment for both years were denied by officials of the State Treasury Department. The stated reason for the denial was that, under applicable principles of state constitutional law, N.J.S.A. 54:33-10 is not self-effectuating and that the payments it describes may not be made *300 without specific appropriation therefor having been made by the Legislature for each of the years in question.
Appellant's principal argument is that the statute provides a clear noncontingent self-executing process for recurrent disbursements which does not require an annual appropriation or any further legislative action. Appellant seeks an order of this court requiring the State Treasurer, the State Comptroller and the Director of the Division of Taxation to comply with the terms of N.J.S.A. 54:33-10. No relief is sought against the remaining respondents who are described as "nominal parties."
The parties are in agreement as to the underlying facts. Since 1909, when the predecessor of N.J.S.A. 54:33-10 was enacted, until 1975, the State has paid to Monmouth County 5% of the transfer inheritance taxes collected from property of decedents residing in the county. Since at least 1916, an annual appropriation has been provided for in the General Appropriations Act for each fiscal year up to and including 1974-1975. The Budget Message for the fiscal year 1975-1976 submitted by the Governor to the Legislature included a request that $3,500,000 be appropriated for apportionment among the counties of 5% of the transfer inheritance tax collected. However, the item in the appropriation act was disapproved by the Governor in a "line item veto" and was not reinstated by the Legislature. The 1976-1977 General Appropriations Act, L. 1976, c. 42, did not contain any appropriation to provide funds for distribution pursuant to N.J.S.A. 54:33-10.
Initially, in evaluating the propriety of the actions of the state officials it is appropriate to consider the fundamental relationship of municipalities and other subdivisions to the State. Municipalities are creatures of the State. Moyant v. Paramus, 30 N.J. 528, 535 (1959). As political subdivisions of the State they owe their very existence and the extent of their powers and privileges to the ultimate authority of the legislative process. Finn v. Wayne Tp., 45 N.J. Super. 375, 379 (App. Div. 1957).

*301 * * * the state may withhold, grant or withdraw powers and privileges, as it sees fit. However great or small its sphere of action, it remains the creature of the state, exercising and holding powers and privileges subject to the sovereign will. [Trenton v. New Jersey, 262 U.S. 182, 187, 43 S.Ct. 534, 67 L.Ed. 937 (1922)]
N.J. Const. (1947), Art. VIII, § II, ¶ 2, provides as follows:
No money shall be drawn from the State treasury but for appropriations made by law. All moneys for the support of the State government and for all other State purposes as far as can be ascertained or reasonably foreseen, shall be provided for in one general appropriation law covering one and the same fiscal year; except that when a change in the fiscal year is made, necessary provision may be made to effect the transition. No general appropriation law or other law appropriating money for any State purpose shall be enacted if the appropriation contained therein, together with all prior appropriations made for the same fiscal period, shall exceed the total amount of revenue on hand and anticipated which will be available to meet such appropriations during such fiscal period, as certified by the Governor.
Art. VIII, § II, ¶ 3 provides in part that
The Legislature shall not, in any manner, create in any fiscal year a debt or debts, liability or liabilities of the State, which together with any previous debts or liabilities shall exceed at any time one per centum of the total amount appropriated by the general appropriation law for that fiscal year, unless the same shall be authorized by a law for some single object or work distinctly specified therein.
Reading the two sections together, as we are required to do, Behnke v. New Jersey Highway Auth., 13 N.J. 14, 24 (1953), it is manifestly clear that any expenditure of moneys from the Treasury is forbidden except to satisfy an appropriation specifically enacted by the Legislature. A statutory direction to State officials such as is found in N.J.S.A. 54:33-10 is not effective as an appropriation. In Washington Ass'n v. Middleton, 11 N.J. Misc. 277, 165 A. 423 (Sup. Ct. 1933), the effect of a statute directing the *302 State Treasurer to pay to the president or treasurer of the Washington Association a sum of money semi-annually for the care and maintenance of the Washington headquarters building in Morristown was considered. The statute directing payment of $1250 semi-annually, L. 1874, c. 309, § 7 at 1149, was amended by L. 1931, c. 46, to provide for semi-annual payments of $2,500. However, the annual appropriation act adopted in that same year appropriated only the sum of $2,500 for the entire year. The former Supreme Court held, in an action seeking to compel the State Treasurer to pay over the entire $5,000, that mandamus would not lie because the Treasurer could not make payment of an amount in excess of available appropriated funds. The decision was based on the provision of the Constitution in effect at that time found in N.J. Const. (1844), Art. IV, § VI, ¶ 2, providing that "No money shall be drawn from the treasury but for appropriations made by law." The very same language is found in the first sentence of the constitution in Art. VIII, § II, ¶ 2.
It has also been held that statutory language which appears to mandate future appropriations is only an expression of future intention and cannot constitutionally bind a future legislature to make an appropriation. Holster v. Passaic Cty. College Bd. of Trustees, 59 N.J. 60, 71 (1971); see also, State v. Lanza, 27 N.J. 516 (1958), app. dism. 358 U.S. 333, 79 S.Ct. 351, 3 L.Ed.2d 350 (1959), reh. den. 359 U.S. 932, 79 S.Ct. 606, 3 L.Ed.2d 634 (1959). An exemption from that general principle is only available through legislation which has been approved by the people in a referendum conducted pursuant to Art. VIII, § II, ¶ 3. "Basically the intention was to prevent one Legislature from incurring debts which subsequent Legislatures would be obligated to pay, without prior approval by public referendum." N.J. Sports & Exposition Auth. v. McCrane, 61 N.J. 1, 13-14 (1972), app. dism. 409 U.S. 943, 93 S.Ct. 270, 34 L.Ed.2d 215 (1972). *303 See also the concurring and dissenting opinion of Weintraub, C.J., at 61 N.J. 40 and 51-52. We hold, therefore, that the direction of N.J.S.A. 54:33-10 to pay each county a percentage of the transfer inheritance taxes is not self-executing as appellant contends.
Moreover, the action which appellant seeks us to compel is directly contrary to the expressed will of the Legislature in declining to make the appropriations in question. The courts are without power to order the Legislature to appropriate money or to order the Governor to approve an appropriation if one were made. Fitzgerald v. Palmer, 47 N.J. 106, 108 (1966). Such an order would constitute a judicial intrusion upon the legislative and executive authorities in violation of the doctrine of separation of powers expressed in N.J. Const. (1947), Art. III, par. 1. Gallena v. Scott, 11 N.J. 231, 238 (1953).
Appellant further argues that the State Treasurer is a mere collection agent for each county's fixed percentage; that title vests in the counties as soon as the taxes are collected; that withholding of the counties' percentage is a conversion of the funds and that the taxes collected are impressed with a trust in favor of the counties. These arguments ignore the fundamental relationship between the counties and the State and the constitutional principles which we have outlined above. We reject them as clearly lacking in merit. Nor do we find merit in the suggestion made in appellant's reply brief that the transfer inheritance tax receipts are a separate fund not subject to constitutional strictures or appropriations.
Affirmed.